Endicott,
Petitioner,
&c.

## The Inhabitants of Ipswich, Petitioners, &c.

Where a highway is made by the county commissioners, in two adjoining towns, at the expense of the county, the commissioners, in order to apportion the sums to be repaid by these towns respectively, must necessarily ascertain the dividing line between the towns, but it is not necessary that they should point out and establish any natural or artificial object as a monument to indicate where they determine the line to be.

Thus, where the commissioners erected a bridge and determined that the thread of the river constituted the dividing line between the towns, and apportioned the expense accordingly, but did not fix upon any monument showing the thread of the river, their proceedings were sustained.

A mandamus does not lie to compel the county commissioners to order a part of the expense incurred by a town in making a highway, to be repaid out of the county treasury, this being a question addressed to the judicial discretion of the commissioners.

MORTON J. delivered the opinion of the Court. Several years ago the county commissioners of this county laid out a new highway, which crossed Ipswich river where it forms the boundary between the towns of Ipswich and Hamilton. This required an expensive bridge and causeway to be built. The commissioners, as usual in laying out a highway, ordered the towns through which it passed to construct so much of it as fell within their respective limits. There was a controversy between these two towns in relation to the true boundary between them, at the place where the bridge was to be built ; the one contending that the western bank of the river, the other, that the *filum aquæ* was the true line. In consequence of this disagreement, both towns neglected to construct the bridge. It was afterwards built by the commissioners at the expense of the county, and the whole sum ordered to be repaid by the town of Ipswich. This decision must have been founded upon

*Nov. 24th 1834.*

the assumption that the *western bank*, and not the thread, of the river formed the boundary between the two towns : because the law requires new roads to be made by the towns within whose territory they are located ; and it cannot be supposed that the commissioners would assess upon one town the expense of constructing a road within the limits of another.

These proceedings were brought before this Court by *certiorari*. And the Court being of opinion that the *filum aquæ* was the true boundary, quashed the order requiring Ipswich to repay the whole sum ; and directed the commissioners to assess upon each of the towns of Hamilton and Ipswich that portion of the expense of building the bridge which was incurred within its respective territory. The duty of the commissioners was pointed out by our former decision. Having determined where the line between these towns was, the commissioners were required to ascertain what portion of the cost of building the bridge was expended on the one side of this boundary, and what on the other ; or, in other words, what part of this bridge ought to have been built by Ipswich, and what part by Hamilton. This could not be done without, in the first place, ascertaining where, in fact, the line was, or in what part of the river the *filum aquæ* lay.

The commissioners accordingly proceeded to reëxamine the subject. And they say in their record, that having given notice to, and heard all parties interested, and having duly considered the subject, " and having determined the boundary line between the towns of Ipswich and Hamilton " " to be the *filum aquæ* or central line of the current of Ipswich river," " do now determine and estimate the expense of building and finishing that part of said bridge and causeway which is situated in said town of Ipswich, to be $1498 ; and the expense of building and finishing that part of said bridge and causeway which is situated in said town of Hamilton, to be $1002." And they order these towns to pay these sums respectively.

To quash that part of this order which applies to Ipswich, the inhabitants of that town now petition for a *certiorari*. If the order be erroneous, they are entitled to the writ ; if not, their petition must be dismissed.

The complaint of the petitioners is, " that the commissioners did not find, determine and state where the boundary line is between the said towns of Ipswich and Hamilton." Now by comparing this with the above adjudication, it is very apparent that the whole ground of complaint is, that the commissioners did not point out and establish some natural or artificial object, as a monument to indicate where they determined the line to be. Was it their duty so to do ?

They had no power to establish the boundaries of these towns, or decide any controversy between them in relation to their territorial limits. If they had made any such decision, it would have been nugatory.

They were bound to determine what part of the expense of building the bridge should be borne by each town ; and, for this purpose, what part of the bridge itself fell within the limits of each town. Of necessity they must fix upon some point as the dividing line. But this might be a mere mental act. And it would be useless, and might be injurious, to leave any memorial of their determination. Their decision, though conclusive in this case, would not be evidence in any other. It would not be admissible in any controversy about boundary, nor in an indictment for neglect to repair the road ; nor in a suit for damages against either of the towns arising from a neglect to repair. Neither would it be useful to furnish to the town the means of inquiring into the correctness of the decision. This might prove the cause of dissatisfaction, but could afford no relief ; for the decision of the commissioners is final. And as the determination itself would pass away with the occasion which called for it, neither wisdom nor necessity required any enduring evidence of its existence. Let those who have the power to perambulate the lines or to establish the boundaries of towns, erect such monuments as they may deem proper, to indicate and perpetuate their determinations. But in our opinion such was not the duty of the commissioners. And we do not discover any error in their proceedings. The petition for *certiorari* must be dismissed.

But the petition is in the alternative, and in the event of the refusal of a *certiorari* seeks for a *mandamus* to the commis-

sioners, to require them to defray from the county treasury some portion of the expense.

By *St.* 1827, *c.* 77, § 8, the commissioners, when they lay out a highway, of general use and importance to the public, are empowered, if they see fit, to order and direct that a portion, not exceeding one half, of the expense of making the same, shall be paid out of the county treasury. This is a judicial power which the commissioners are bound to exercise whenever they are properly called upon. If they improperly refuse to take cognizance of a case regularly before them, this Court will interfere and compel them to do so. And the writ of *mandamus* is the appropriate process for this purpose. But here the authority of this Court ends. We may compel them to exercise their legal discretion ; but we cannot revise their decision. The whole power is vested in them, and they have final jurisdiction of the matter.

The petitioners represent that they made application for allowance out of the county treasury, but that the commissioners refused to take cognizance of their application and adjudicate upon the merits of their case. But this allegation is not supported by the record of the commissioners. It appears that the petitioners made application for an allowance, and that the application was not granted. This, so far from showing that they did not take cognizance of the case, clearly shows that they did entertain the petition and did adjudicate upon it. And this is all which we can require of them. Whether they judged correctly or incorrectly, it is not our province to determine.

The reasons of their judgment do not appear ; and it does not appear that they put any construction upon the proviso of the 8th section of the statute aforesaid, and therefore we cannot determine that they put a wrong one upon it. It is not easy to understand this proviso, and as the construction is not involved in the present case, we do not deem it necessary to attempt any explanation of it.

Whether the allowance to Hamilton was properly or improperly made, cannot affect the rights of the petitioners, and it would be supererogatory to decide that question.

On the whole, we are of opinion, that the petitioners have

failed to support either branch of their petition, and that it must be dismissed.

*Saltonstall*, for the petitioners.

*Proctor*, for the respondents.